BANK OF WAUKEGAN, as Trustee, *et al.*, Plaintiffs-Appellants, v. THE VILLAGE OF VERNON HILLS, Defendant-Appellee.

Second District   No. 2—92—0814

Opinion filed December 22, 1993.—Rehearing denied January 28, 1994.

William A. Cogley, of Morrison & Morrison, P.C., of Waukegan (Joseph T. Morrison, of counsel), for appellants.

Adeline J. Geo-Karis & Associates, of Zion, and Jill Kaar, of Highland Park (Adeline J. Geo-Karis and Berle L. Schwartz, of counsel), for appellee.

PRESIDING JUSTICE INGLIS delivered the opinion of the court:

Plaintiffs, the trustee of an Illinois land trust and its beneficiaries (the developers), sued the Village of Vernon Hills (the village) after the village denied approval of the developers' site plan for the construction of two four-story apartment buildings in the village. The developers sought a declaratory judgment stating that they have a vested right to develop the apartment complex, and a writ of *mandamus* requiring the village to approve their site plan. After a trial, the circuit court of Lake County denied relief, and a timely appeal was taken. In this court, the developers argue: (1) that the trial court erred in finding that a general zoning ordinance repealed prior specific zoning ordinances; (2) that the trial court erred in refusing to find a vested right in favor of the developers; (3) that a writ of *mandamus* should have issued; (4) that the trial court erred in determining that a discrepancy existed between certain village zoning maps and village zoning ordinances and that the ordinances controlled; (5) that the village should have been estopped from denying approval of the site plan; (6) that the trial court should have struck testimony relating to the relative values of the subject property; and (7) that the trial court should not have admitted testimony on the issue of whether a building permit application had ever been submitted to the village for the subject property. We affirm.

On April 6, 1971, the village approved an annexation agreement for over 500 acres of land which included the 8.62-acre parcel of property at issue in this case (the property). The original purchasers of the land covered by the annexation agreement are not parties to this lawsuit. The annexation agreement did not provide for an expiration date, but by statute its validity was limited to five years. (Ill. Rev. Stat. 1971, ch. 24, par. 11—15.1—1.) The land was annexed to the village that same day, April 6, by village ordinance No. 110. Also on April 6, the village passed ordinance No. 108, which zoned the land B-1 with a special use for a planned-unit development. This zoning permitted multiple-family residential use.

The annexation agreement was first amended on March 26, 1976, and its term was thereby extended to April 5, 1981, in conformance with a 1973 statutory amendment allowing annexation agreements to survive for 10 years. (Ill. Rev. Stat. 1975, ch. 24, par. 11—15.1—5.)

The second amendment to the agreement was on June 28, 1977, and it, *inter alia,* incorporated a new development plan dated May 12, 1977. Concurrent with this amendment, ordinance No. 108 was amended to incorporate the new development plan dated May 12, 1977. The agreement was amended for a third time on June 5, 1979. Changes made in the third amendment are not germane to this appeal. The annexation agreement expired on April 5, 1981.

On June 15, 1982, the village adopted a comprehensive revision of its zoning code. This revision is known as ordinance No. 402. Under the new code, B-1 zoning no longer permitted residential uses. Moreover, residential uses were not listed under permissible special uses for B-1 districts. Article 26 of ordinance No. 402 repealed all conflicting ordinances or parts thereof.

In August 1986, the developers started to inquire about obtaining the property and constructing apartments on it. In December 1986, the developers signed a contract to purchase the property. They filed an application for site plan approval on December 26, 1986. There is a dispute over what the developers were told by village officials concerning their plans to build apartments. The village manager, Larry Laschen, testified that he told the developers' agent, Kernel Parikh, that the special use for a planned-unit development had expired. Mr. Parikh testified that Mr. Laschen told him that he (Laschen) was unsure about the property's zoning and that he would contact the village attorney about the matter. On January 28, 1987, a colleague of the village attorney wrote a letter to Mr. Laschen stating that the special use for a planned-unit development was still in effect for the property. The developers subsequently obtained a copy of this letter, either from Mr. Laschen or an associate of theirs. Mr. Laschen denied ever forwarding a copy to the developers. The village attorney later gave a contrary opinion and her colleague then came to the conclusion that the special use had expired. The village attorney's opinion was communicated to Mr. Laschen and village board members, but we can find no record of her opinion being communicated to the developers. Mr. Parikh testified that he could not remember whether the village attorney had told him of her opinion that the special use had expired.

After several hearings resulting in revisions to the site plan, the village board of trustees denied approval of the third revised site plan on May 5, 1987. On August 7, 1987, the developers completed their purchase of the property. On September 29, 1987, after this suit had been filed, the village passed ordinance No. 601, which repealed the special-use permit for the property granted by ordinance No. 108. Further facts will be furnished when needed in this opinion.

EXPIRATION

■ Before considering the developers' claims of error, we address the village's contention that the special-use permit bestowed by ordinance No. 108 was unenforceable after the expiration of the annexation agreement. The village contends that a suit to enforce an ordinance adopted pursuant to an annexation agreement is tantamount to a suit to enforce the agreement itself and that an annexation agreement is not enforceable after it expires. Thus, the village argues, the developers' suit here is not viable.

We hold that ordinance No. 108 and ordinance No. 228 expired with the annexation agreement. Thus, when the developers sought to develop the property years later, there existed no special use for a planned-unit development on the property.

The Illinois statute governing the validity of annexation agreements now provides, in pertinent part:

"Any annexation agreement executed prior to October 1, 1973 which was executed pursuant to a two-thirds vote of the corporate authorities and which contains provisions not inconsistent with Section 11–15.1–2 hereof [making zoning a permissible subject of annexation agreements] is hereby declared valid and enforceable as to such provisions for the effective period of such agreement, or for 20 years from the date of execution thereof, whichever is shorter." (65 ILCS 5/11–15.1–5 (West 1992) (the annexation statute).)

At the time the annexation agreement was first amended in 1976, section 11–15.1–5 (Ill. Rev. Stat. 1975, ch. 24, par. 11–15.1–5) read almost identically to the present annexation statute, except that it limited the terms of annexation agreements to 10 years. The 10-year limit was still in force when the annexation agreement was due to expire in 1981. (Ill. Rev. Stat. 1981, ch. 24, par. 11–15.1–5.) Thus, the annexation agreement at issue here, executed on April 6, 1971, was amended to provide for an expiration date of April 5, 1981.

The annexation agreement provides:

"Upon annexation of the PROPERTY to the VILLAGE, the PROPERTY shall be classified as a B-1 District subject to a special use for a planned unit development, to be developed in accordance with the Development Plan in preliminary form, which Development Plan has been identified by the parties and is made a part hereof and is hereby approved by the Board of Trustees of the VILLAGE pursuant to the VILLAGE Zoning Ordinance."

Further, the annexation agreement states that the village zoning ordinance has been amended to classify the property as a B-1 district subject to a special use for the annexation applicants' planned-unit development. The annexation agreement also states that the village "will not, during the period of five years following the execution of this agreement, *** enact, modify or amend provisions of the VILLAGE ordinances and regulations relating to zoning, subdivision controls, official plans, building, housing and related restrictions of any nature of the VILLAGE so that the provisions applicable to any portion of the property would be more restrictive or impose greater obligations or other burden than the provisions applicable to such portion as contemplated by this Annexation Agreement."

Ordinance No. 108, which, as stated, was enacted the same day the annexation agreement was executed, specifically states that it is approving an application to zone certain property "upon the annexation thereof" as B-1 with a special use for a planned-unit development.

When the annexation agreement was later extended until April 5, 1981, it also was amended to extend the village's promise to refrain from making zoning changes until the agreement's expiration. Later, when the agreement was amended again, it provided that the term "development plan" as used in the agreement's zoning article would henceforth refer to a later-dated development plan submitted by one of the annexation applicant's successors in interest. The same day that the second amendment to the annexation agreement was executed, ordinance No. 228 was approved. Ordinance No. 228 amended ordinance No. 108, which granted the special-use permit for a planned-unit development. Ordinance No. 228 permitted planned-unit development of the property in accordance with the later-dated development plan.

Our reading of the above statute, ordinances and documents convinces us that the B-1 zoning and the special-use permits granted by ordinance Nos. 108 and 228 could only survive as long as the annexation agreement survived. It is clear that the B-1 zoning classification and the special-use permits were only granted because of promises made in the annexation agreement. The village's zoning the property B-1 and granting special-use permits for specific planned-unit developments were *provisions* of the annexation agreement. Under the various annexation statutes in force at the relevant times, a provision of an annexation agreement is only enforceable during the life of the annexation agreement, which in this case was until April 5, 1981.

The fact that the B-1 zoning classification and the special-use permits were granted by ordinance does not mean that the zoning classification or the permits survive the expiration of the annexation agreement. "Municipalities cannot *** adopt ordinances under a general grant of power which infringe upon the spirit of the State law or are repugnant to the general policy of the State." (*Village of Mundelein v. Hartnett* (1983), 117 Ill. App. 3d 1011, 1015.) Further, "a city ordinance cannot make lawful what the State legislature has expressly declared to be unlawful." (*Ligenza v. Village of Round Lake Beach* (1985), 133 Ill. App. 3d 286, 293.) When there is conflict between a municipal ordinance and a State statute, the statute prevails. (*Village of Mundelein*, 117 Ill. App. 3d at 1015.) Thus, an exercise of police power by a municipality must be in harmony with any State law relating to the same subject. (*Village of Oakwood Hills v. Diamond* (1984), 125 Ill. App. 3d 58, 61.) Here, a conflict existed between the annexation statute and ordinance Nos. 108 and 228 upon the expiration of the annexation agreement. To allow zoning ordinances implementing an annexation agreement to exceed the statutory maximum term for enforceability of the agreement's provisions negates the intent of the statute.

Any other result here also would allow evasion of the statute limiting the terms of annexation agreements. The legislature clearly decided to allow annexation agreements to survive only a limited time. The developers sought, in effect, to enforce the provisions of the annexation agreement five years after the agreement had expired. Granted, the village could have stated clearly in its ordinances that the special-use permits and the zoning classification were to expire with the annexation agreement pursuant to which they were created. The village could also have moved swiftly upon the expiration of the annexation agreement to rezone the property. However, we will not allow the village's inaction to usurp the clear intention of the legislature. The zoning classification and the special-use permits here were part and parcel of the annexation agreement and are thus limited in the duration of their enforceability by the annexation statute.

The case of *Meegan v. Village of Tinley Park* (1972), 52 Ill. 2d 354, is instructive. There, a developer entered into an agreement with the Village of Tinley Park for the annexation of certain property. "[T]he Village enacted an *ordinance conforming with the terms of the agreement as to the zoning of the developer's land.*" (Emphasis added.) (*Meegan*, 52 Ill. 2d at 355.) A certain parcel of the property was "earmarked" for a gas station and the zoning classification given to the property by the village pursuant to ordinance was B-1, which

allowed gas stations. Before the annexation agreement expired, the village amended its zoning classifications so that B-1 districts no longer allowed gas stations. After the expiration of the annexation agreement, the developer's successors in interest sought to build a gas station on the parcel. They were not allowed to and they subsequently brought suit to enforce rights acquired under the annexation agreement. The supreme court held that the amended zoning ordinance was of no effect during the life of the annexation agreement, but that after the agreement expired, the new zoning amendment applied. *Meegan*, 52 Ill. 2d at 358-59.

While *Meegan* is not directly on point, it is important to note that both the parties and the court understood that any zoning rights that were obtained by the developer or his successors in interest were obtained by virtue of the annexation agreement. Likewise, here, it was the annexation agreement which bestowed any right to zoning classification or special-use permits, and the ordinances zoning the property and granting those permits were simply the means by which the village was required to meet its obligations under the annexation agreement. (See 65 ILCS 5/1—2—1 (West 1992) (requires municipalities to enact ordinances or make rules or regulations to carry their State-given powers into effect).) We thus believe that the special-use permits were unenforceable after the expiration of the annexation agreement. Consequently, no special-use permits for a planned-unit development covered the property at the time the developers sought to construct their apartment complex.

Because of our decision on this issue, we need not decide whether ordinance No. 402 accomplished an implied repeal of ordinance Nos. 108 and 228 by changing the B-1 classification so that it no longer permitted residential uses. Not only did ordinance Nos. 108 and 228 no longer exist when ordinance No. 402 was enacted, but the developers have made it clear in their briefs that it is the special-use permit for a planned-unit development, not the original B-1 zoning for the property, upon which they rely.

## VESTED RIGHT

The developers argue that they have a vested right to build apartments on the property because they expended substantial sums of money based on their interpretation of the village's zoning code and zoning maps in effect in 1986 and 1987. The village's zoning maps for 1986 and 1987 show the property zoned for a planned-unit development. In addition, neither ordinance No. 108 nor ordinance No. 228, which granted special-use permits for specific planned-unit develop-

ments, specifically stated that they expired along with the annexation agreement that gave them life. The developers thus argue that it was reasonable for them to assume that, in 1986, the property was still zoned B-1 with a special use for a planned-unit development and that the village should not be allowed to alter the zoning of the property after the developers changed position in reliance on the property's apparent zoning.

The village argues that the developers were never told that they could begin construction and, in fact, never even applied for a building permit. It also asserts that the developers were told by the village manager prior to their purchase of the property that the manager thought the special use had expired. Further, the village notes that Mr. Parikh, who represented the developers with the village, had spent several years as the building, zoning and planning officer for the City of Waukegan, Illinois. This, the village asserts, belies any claim of naive reliance by the developers. In short, the village argues that the developers simply received too many conflicting signals from the village to warrant any reasonable expectation that approval of their site plan was forthcoming.

■ Where a landowner makes expenditures or incurs obligations in reliance on the probability that a building permit will be issued or a plat will be approved, a vested right to obtain the permit or the approval may be acquired, even though the zoning classification for the property at issue is subsequently changed to prohibit the proposed use. (*O'Connell Home Builders, Inc. v. City of Chicago* (1981), 99 Ill. App. 3d 1054, 1060; *People ex rel. First National Bank & Trust Co. v. Village of Deerfield* (1964), 50 Ill. App. 2d 349, 353.) In order for a landowner to invoke this rule, "he must show (1) that there was a 'probability' that [municipal approval] would issue and (2) that a substantial change in position was incurred based upon this probability." (*People ex rel. Shell Oil Co. v. Town of Cicero* (1973), 11 Ill. App. 3d 900, 904.) A probability that approval is forthcoming exists when the property at issue is zoned to permit the use requested by the landowner. *Town of Cicero*, 11 Ill. App. 3d at 904, citing *Cos Corp. v. City of Evanston* (1963), 27 Ill. 2d 570.

■ We have already decided that the property here no longer was subject to a special use for a planned-unit development at the time the developers sought to obtain approval for the apartment complex plans. Thus, the developers fail the first part of the test and the cases they cite are rendered distinguishable. In *Cos Corp.*, it was undisputed that the plaintiff's proposed plans were in compliance with the zoning ordinance in effect when the plans were submitted to the

city. (*Cos Corp.*, 27 Ill. 2d at 576.) Likewise, in *O'Connell*, it is apparent that the zoning ordinance in effect when the plaintiff submitted its application for a building permit allowed the proposed structure. (*O'Connell*, 99 Ill. App. 3d at 1059-60.) Compliance with zoning in effect at the time plaintiffs submitted their plat for approval was also confirmed in *Village of Deerfield. Village of Deerfield*, 50 Ill. App. 2d at 351-53.

Moreover, while the developers had received definite indications that the property was subject to a special use for a planned-unit development, especially from the village zoning maps and the letter from the village attorney's colleague, there was always a question as to what the property's zoning classification was in the minds of the parties. Specifically, the village manager testified that he told Mr. Parikh on several occasions that, in his opinion, the special use had expired before the developers obtained an interest in the property. Additionally, the village president opined at a meeting of the committee of the whole on April 14, 1987, that the zoning of the property was in question. The minutes of the committee of the whole meeting of April 14 reveal, after noting that the committee would recommend denial of the developers' site plan, that the president "thought site would revert to B-1 zoning and go to business." Thus, Mr. Parikh was on notice after April 14 that the village apparently was not in agreement with the opinion letter issued by the village attorney's colleague. The president's remark came months after the opinion letter was drafted and after Mr. Parikh admittedly had obtained a copy of the letter. This remark was also made, according to the village manager's testimony, after the village president was informed that the village attorney had rejected the position of her colleague and opined that the special use for the property had expired.

Based on the above facts, it cannot be said that the zoning of the property was settled at the time the developers sought to have their site plan approved. Consequently, the developers have not met the first part of the vested rights test and could not have acquired a vested right to have their site plan approved. A reading of the record shows that instead of proceeding cautiously and making sure that all "i's" were dotted and "t's" were crossed with regard to zoning when the developers ran into problems, Mr. Parikh simply went ahead with the developers' plans based on his own belief that a special-use permit was still in force for the property. As noted, the village added a certain amount of fuel to Mr. Parikh's fire, but it did not lead him to believe that the zoning question was a closed one.

As our supreme court stated:

"Where an individual or corporation expends substantial sums relying on the *then existing zoning* and zoning ordinances and proceeds to seek a permit in compliance with them, it would be a grave injustice to allow municipal officials to hold up an action on issuance of a building permit until an amendatory ordinance could be passed *changing the standards to be met so that a permit formerly lawful would now not be issued due to an abrupt change in the law.*" (Emphasis added.) (*Cos Corp. v. City of Evanston* (1963), 27 Ill. 2d 570, 577.)

There was no abrupt change in the law in this case, and no understanding as to what zoning prevailed when the developers began their talks with the village. Thus, the rationale behind the vested rights rule, preventing grave injustice, does not apply in this case.

In sum, we hold that the village ordinances zoning the property B-1 with a special use for planned-unit developments expired when the annexation agreement pursuant to which the ordinances were enacted expired. We also hold that the developers had no vested right to the approval of their third amended site plan. Our conclusions make it unnecessary to consider the developer's other arguments, with the exception of the developer's claim that the incorrect zoning maps showing the property as being subject to a special use for planned-unit development estop the village from denying approval of their site plan. However, the developers have not cited any authority for their argument, and it is thus waived. 134 Ill. 2d R. 341(e)(7); *In re Marriage of Hunter* (1992), 223 Ill. App. 3d 947, 955.

The judgment of the circuit court of Lake County is affirmed.

Affirmed.

DOYLE and COLWELL, JJ., concur.