No. 2-09-0367     Filed:  3-11-10

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| FALCON FUNDING, LLC, | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 06--MC--4 |
| | ) | |
| THE CITY OF ELGIN, | ) | Honorable |
| | ) | Michael J. Colwell, |
| Respondent-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the opinion of the court:

Respondent, the City of Elgin (City), appeals from the trial court's order granting summary judgment to petitioner, Falcon Funding, LLC, denying summary judgment to the City, and disconnecting certain property from the City's corporate limits.  We affirm.

I.  BACKGROUND

On November 6, 1991, petitioner[1] and the City entered into an annexation agreement to

_____

[1]In the annexation agreement, the party referred to as the owner of the subject property is The Northern Trust Company as trustee under the provisions of a trust agreement dated November 8, 1955, known as trust No. 22974.  Subsequently, Galvin Family Partners, L.P., petitioned the trial court to disconnect the property.  On August 18, 2008, in light of Falcon Funding, LLC's, purchase of the property, the trial court granted Galvin's motion to substitute Falcon as petitioner in this action. For simplicity, we refer to the property's record owner as petitioner.

annex 36.12 acres[2] of real property (with parcel identification number 03--19--400--019) to the City. The annexation agreement provided that, as the property's owner, petitioner intended to develop the property, which is located at the southwest corner of Randall Road and Route 72, and further contained guidelines for the provision of sewer and water services to the property. The agreement provided that the City would pass an ordinance classifying the property as a B-3 Service Business District, but that farming would continue to be permitted on the land as a legal, nonconforming use. Plaintiff agreed to pay certain development and impact fees, to share the cost of water mains, and to pay for extensions of the sewer and any tap-on fees. The property was never developed, and the annexation agreement expired on November 5, 2001.

On July 27, 2006, petitioner petitioned the trial court, pursuant to section 7--3--6 of the Illinois Municipal Code (Code) (65 ILCS 5/7--3--6 (West 2006)), to disconnect the subject property from the City. Petitioner alleged that the annexation agreement expired in November 2001 and that the property was never developed. Petitioner further alleged that: (1) the tract generated real estate tax revenues of $3,026 for the City, was vacant, and had been used for agricultural purposes both before and after annexation; (2) the tract is located on the border of the City's corporate limits; (3) disconnection from the City would not result in the isolation of any part of the City from the remainder of the City; (4) disconnection would not substantially disrupt any existing municipal service facilities or unreasonably disrupt the City's growth prospects and plan and zoning ordinances; and (5) disconnection would not unduly harm the City through the loss of future tax revenue. Petitioner attached to its petition a legal description of the property, real estate tax information, and data

---

[2]In petitioner's statement of facts filed in support of its summary judgment motion, it asserted that the property consists of 37.0558 acres.

reflecting that the City's 2006 budget exceeded $70 million each in revenues and expenditures.

In its answer, the City admitted all of the allegations in petitioner's petition, except that it: (1) denied that disconnection of the property would not result in the isolation of any part of the City from the remainder of the City; (2) denied that fire protection is provided by the Rutland-Dundee Fire Protection District; and (3) demanded strict proof of ownership, of the legal description, of the real estate tax revenue the property generates for the City, and that the property is located on the border of the City's corporate limits for about 1,259.22 feet. The City also raised two affirmative defenses. In its first affirmative defense, the City alleged that the annexation agreement required the City to construct, for petitioner's and the property's benefit and without cost to petitioner, certain sanitary sewer and water system improvements; that it did so at a cost exceeding $8 million; that petitioner accepted all of the benefits under the agreement; that the City had not denied approval for any development of the property; and that petitioner was not entitled to disconnection under section 7--3--6 of the Code. In what it labeled as its second affirmative defense, the City re-alleged the foregoing and further asserted that the equitable estoppel doctrine barred disconnection. Accordingly, the City requested that the petition be dismissed with prejudice and that the City be awarded costs.

Petitioner moved to strike the City's affirmative defenses, arguing that estoppel could not be raised as a defense to defeat a disconnection petition and that the fact that petitioner may have received benefits from the City while the property was located within its limits is not a defense to and does not bar disconnection. On January 3, 2007, the trial court denied petitioner's motion.

On June 25, 2008, petitioner moved for summary judgment, arguing that there were no genuine issues of material fact because the six requirements enumerated in section 7--3--6 were satisfied and because equitable estoppel is not a valid basis for denying a disconnection petition.

In response, the City filed: (1) a cross-motion for summary judgment; and (2) a memorandum of law in response to petitioner's summary judgment motion and in support of its cross-motion. In its cross-motion, the City argued that it was entitled to summary judgment because petitioner had not established compliance with one of the six enumerated statutory requirements, specifically, the isolation requirement, and because equitable estoppel principles precluded a showing that petitioner was otherwise entitled to disconnection. The City attached to its motion the affidavit of its engineer, who averred that he is familiar with the subject property and the parties' annexation agreement and that the City spent about $9 million to construct the water and sanitary system improvements referenced in the agreement. The City also attached to its motion the affidavit of its "GIS" planner and two maps he prepared depicting the subject area predisconnection and postdisconnection.

In its memorandum, the City argued that disconnection of petitioner's property would result in the isolation of land within its corporate limits,[3] noting that Route 72 and Randall Road border the property on the north and east sides and are within the City's corporate limits and will remain so in the case of disconnection, as allegedly reflected in the maps attached to petitioner's motion. In the City's view, disconnection would result in two strips of land projecting east and north from the City and meeting at a right angle. Alternatively, the City asserted its estoppel affirmative defense, arguing that petitioner voluntarily entered into the annexation agreement with the City and induced the City

---

[3]Maps submitted by both parties reflect that the southwest quadrant of the intersection of Randall Road and Route 72, including the subject property and the portions of Randall Road and Route 72 that border the subject property, is within the City's corporate limits. By this court's reading of the maps, disconnection would result in the creation of a hole near the northern edge of the municipality's corporate limits.

to provide improvements. In the City's view, the statute permitted it to raise this affirmative defense to defeat the disconnection petition.

On March 4, 2009, the trial court granted petitioner's motion for summary judgment and denied the City's cross-motion for summary judgment. On March 11, 2009, the court entered an order to that effect and ordered the subject property thereby disconnected from the City. The City appeals.

## II. STANDARD OF REVIEW

We review de novo a ruling on a summary judgment motion. Ioerger v. Halverson Construction Co., 232 Ill. 2d 196, 201 (2008). Summary judgment is appropriate only when the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2--1005(c) (West 2008); Ioerger, 232 Ill. 2d at 201. In deciding a motion for summary judgment, the court may draw inferences from undisputed facts to determine whether a genuine issue of material fact exists. Loyola Academy v. S & S Roof Maintenance, Inc., 146 Ill. 2d 263, 272 (1992). However, where reasonable persons could draw divergent inferences from undisputed facts, the issue should be decided by a trier of fact and the motion for summary judgment should be denied; the trial court does not have discretion to decide the matter on summary judgment. Loyola, 146 Ill. 2d at 272.

Where parties file cross-motions for summary judgment, they invite the court to decide the issues as questions of law, and entry of summary judgment for one party or the other may be proper. Giannetti v. Angiuli, 263 Ill. App. 3d 305, 312 (1994). However, even where parties file cross-motions for summary judgment, the court is not obligated to grant summary judgment. Kellner v.

Bartman, 250 Ill. App. 3d 1030, 1033 (1993). It is possible that neither party alleged facts, even if undisputed, that were sufficient to warrant judgment as a matter of law or to preclude a genuine issue of material fact, despite the parties' invitation to the court to decide the issues as legal questions. 735 ILCS 5/2--1005 (West 2008); Giannetti, 263 Ill. App. 3d at 312.

### III. ANALYSIS

On appeal, the City does not challenge the trial court's findings concerning the six enumerated statutory requirements for disconnection. It challenges only the court's rejection of its equitable estoppel defense, which the court did in the context of finding that the subject property was otherwise "entitled to disconnection."

### A. General Disconnection Law

The petitioners in disconnection cases have the burden of proving the statutory requirements. In re Petition to Disconnect Certain Territory from the Village of Campton Hills, Kane County, Illinois, 386 Ill. App. 3d 355, 361 (2008). Regardless of the petitioners' purpose, the disconnection statute is liberally construed in favor of disconnection. Campton Hills, 386 Ill. App. 3d at 361; see also Harris Trust & Savings Bank v. Village of Barrington Hills, 133 Ill. 2d 146, 154-55 (1989). "The common theme is to allow disconnection absent a hardship or impairment to the municipality." Campton Hills, 386 Ill. App. 3d at 361. The purpose of the disconnection statute is to allow property owners to avoid the burdens of municipal taxation and regulation by disconnecting property that is not being used for municipal purposes. LaSalle Bank National Ass'n v. Village of Bull Valley, 355 Ill. App. 3d 629, 638 (2005).

The disconnection statute at issue here,[4] which is section 7--3--6 of the Code and is entitled

_____

[4]The two other methods by which property owners may have their property disconnected

"Land disconnected by court procedure," provides, in relevant part:

"§7--3--6. The owner or owners of record of any area of land consisting of one or more tracts, lying within the corporate limits of any municipality may have such territory disconnected which (1) contains 20 or more acres; (2) is located on the border of the municipality; (3) if disconnected, will not result in the isolation of any part of the municipality from the remainder of the municipality, (4) if disconnected, the growth prospects and plan and zoning ordinances, if any, of such municipality will not be unreasonably disrupted, (5) if disconnected, no substantial disruption will result to existing municipal service facilities, such as, but not limited to, sewer systems, street lighting, water mains, garbage collection and fire protection, (6) if disconnected the municipality will not be unduly harmed through loss of tax revenue in the future. The procedure for disconnection shall be as follows: The owner or owners of record of any such area of land shall file a petition in the circuit court of the county where the land is situated, alleging facts in support of the disconnection. The municipality from which disconnection is sought shall be made a defendant, and it, or any taxpayer residing in that municipality, may appear and defend against the petition. If the court finds that the allegations of the petition are true <u>and</u> that the area of land <u>is entitled to disconnection</u> it shall order the specified land disconnected from the designated municipality. If the circuit court finds that the allegations contained in the petition are not true, the court shall enter an order

_____

from a municipality are pursuant to: (1) section 7--3--1 of the Code (65 ILCS 5/7--3--1 (West 2008)), which provides for the disconnection of territory from a newly organized municipality; and (2) section 7--3--4 of the Code (65 ILCS 5/7--3--4 (West 2008)), which provides for disconnection by petitioning the municipality itself.

dismissing the petition." (Emphases added.) 65 ILCS 5/7--3--6 (West 2008).

Before a court orders a disconnection, it must find <u>both</u> that the six "statutory requirements are fulfilled <u>and</u> that the property is otherwise entitled to disconnection." (Emphasis in original.) <u>Gaylor v. Village of Ringwood</u>, 363 Ill. App. 3d 543, 548 (2006). Further, to give the "entitled to disconnection" provision effect, "section 7--3--6 must contemplate the interposition of an affirmative defense to affect the determination of whether a property is 'entitled to disconnection.' " <u>Gaylor</u>, 363 Ill. App. 3d at 548.

### B. Availability of Equitable Estoppel as an Affirmative Defense

The City relies on <u>Gaylor</u> for the proposition that equitable estoppel is available as an affirmative defense in disconnection proceedings under section 7--3--6 of the Code. We agree that <u>Gaylor</u> is guiding.

In <u>Gaylor</u>, the landowners entered into an annexation agreement with a village to annex about 23 acres of property into the village. The agreement contemplated that the landowners would develop the property, and it had a 20-year term. The agreement did not address disconnection. During the 20-year term of the annexation agreement, the landowners petitioned for disconnection from the village's municipal boundaries. The village, in an answer and counterclaim, sought to enforce the agreement. Subsequently, the parties stipulated that the landowners' proposed disconnection satisfied the six conditions in section 7--3--6 of the Code. On cross-motions for summary judgment, the trial court granted disconnection.

On appeal, this court first addressed the statutory interpretation question and held, as we quoted above, that section 7--3--6 requires the trial court, before ordering disconnection, to find both that the six statutory requirements are satisfied and that the property is otherwise entitled to

disconnection. Gaylor, 363 Ill. App. 3d at 548. Further, this court held that section 7--3--6 "necessarily contemplates the interposition of an affirmative defense" in the determination of whether a property is entitled to disconnection. Gaylor, 363 Ill. App. 3d at 549.

This court then held in the alternative that, even if section 7--3--6 did not afford a party the opportunity to raise an affirmative defense to a disconnection petition, such an opportunity did exist, at least in regard to the facts before the court. Gaylor, 363 Ill. App. 3d at 549. This court concluded that the existence of the annexation agreement presented an affirmative defense to the disconnection petition or estopped the landowners from petitioning for disconnection. Gaylor, 363 Ill. App. 3d at 549-50 ("the freedom of parties to contract away statutory rights would allow an existing annexation agreement to be considered as an affirmative defense or an estoppel of a party's right to seek disconnection"). Accordingly, this court held that the village established that the property was not entitled to disconnection and we reversed the trial court's judgment. Gaylor, 363 Ill. App. 3d at 550. This court emphasized that the cases cited by the parties were factually distinguishable because none addressed a scenario in which landowners attempt "to disconnect while an annexation agreement is still in force and the [village] raises the annexation agreement as an affirmative defense to demonstrate that the [landowners'] property is not entitled to disconnection. This factual difference renders this a case of first impression to which the authority cited by the parties provides little guidance." Gaylor, 363 Ill. App. 3d at 550.

Here, the City argues that Gaylor did not limit the types of affirmative defenses that a municipality might raise in opposition to a disconnection petition, nor did it restrict its application to cases involving unexpired annexation agreements. In the City's view, Gaylor merely held that affirmative defenses may be considered in determining whether the statute's "entitled to

disconnection" provision has been satisfied. In its view, a municipality should be entitled to raise a defense of equitable estoppel where a property owner seeks to disconnect after benefitting from substantial improvements that the municipality undertook pursuant to a negotiated annexation agreement and at a cost of over $9 million.

Petitioner responds that equitable estoppel based on an expired annexation agreement is not an allowable affirmative defense to a disconnection petition. Petitioner argues that the City's position runs afoul of the spirit of the disconnection statute and the case law requiring liberal construction in favor of disconnection. In petitioner's view, if the property meets the statute's requirements, petitioner has a right to disconnect. It notes that the annexation agreement here expired and that neither party is bound to the other by contract or estoppel.[5]

We conclude that equitable estoppel is available as an affirmative defense to a disconnection petition filed under section 7--3--6 of the Code. We agree with the City that Gaylor's primary holding--specifically, that section 7--3--6 contemplates the interposition of an affirmative defense to affect the determination of whether a property "is entitled to disconnection"--in no way limits the types of affirmative defenses that may be asserted to attempt to prevent a disconnection. The cases upon which petitioner relies--Indian Valley Golf Club, Inc. v. Village of Long Grove, 173 Ill. App. 3d 909 (1988), Van Bebber v. Village of Scottville, 13 Ill. App. 2d 458 (1957), and Village of Lisle v. Action Outdoor Advertising Co., 188 Ill. App. 3d 751 (1989)--do not warrant a different conclusion.

In Indian Valley, the property owner petitioned under section 7--3--6 of the Code to disconnect about 113 acres of property it owned within the corporate limits of Long Grove. It

---

[5]Neither party has alleged that the other breached the annexation agreement.

appears that no annexation agreement was in effect. On appeal, the village argued that disconnection was barred because the statute was not intended to permit disconnection of property that previously had been voluntarily annexed to a municipality. The village further asserted that it would be inequitable and against public policy for a property owner "to avail himself of the disconnection statute after having reaped the benefits of being within the community for a period of 27 years" and that disconnection was unwarranted because its purpose was to avoid municipal taxes and the village did not levy any taxes. Indian Valley, 173 Ill. App. 3d at 921.

The village cited case law addressing equitable estoppel principles, but this court held that the cases were distinguishable because they did not involve the disconnection statute. Indian Valley, 173 Ill. App. 3d at 921. This court further held that the facts of the case did not call for applying equitable estoppel; that its application would "defeat the purpose of the disconnection statute"; and that there is no authority for concluding that the sole purpose of the disconnection statute is avoidance of municipal taxation. Indian Valley, 173 Ill. App. 3d at 921.

We disagree with petitioner's reading of Indian Valley. That case does not hold that equitable estoppel can never defeat a disconnection petition. Rather, in declining to apply equitable estoppel, this court specifically found that the facts of that case did not warrant its application. Indian Valley, 173 Ill. App. 3d at 921. Indeed, there were no allegations concerning an annexation agreement that had recently expired and under which the village had expended sums to make improvements. More importantly, as noted by the Gaylor court, the Indian Valley court did not interpret section 7--3--6 of the Code or consider affirmative defenses raised thereunder. Gaylor, 363 Ill. App. 3d at 550.

Petitioner also relies on Van Bebber. In that case, the plaintiffs sought to disconnect six tracts of farm property from a village. The specific issue on appeal was whether the six tracts would be

treated as one area of land or as six separate tracts in determining whether the area to be disconnected was located on the village's border. After noting that the trial court has no discretion and must grant a disconnection petition if the statutory requirements are met, the court further noted:

"Although there may have been collateral questions raised in the trial, there is no estoppel, and can be no estoppel to defeat the operation of the statute, if such a petition is filed, and due proof made. The fact that petitioners or the owners of the lands may have received benefits from the municipality, such as lights, access to streets or roads, and other city services or conveniences, while such lands were within the limits of the municipality, regardless of the length of time such lands were within such municipality, is not a defense or bar to disconnection. *** [T]he duty upon the court is *** that if [the] requirements for disconnection of territory from a municipality are met, the court must order it disconnected." Van Bebber, 13 Ill. App. 2d at 462-63.

We disagree with petitioner that Van Bebber instructs that estoppel can never defeat a disconnection petition. Critically, in reviewing the statutory requirements, the appellate court addressed only the enumerated statutory factors and not the "is entitled to disconnection" language, unlike the Gaylor court (Gaylor, 363 Ill. App. 3d at 548). Van Bebber, 13 Ill. App. 2d at 461-62. Furthermore, unlike in Van Bebber, the City here did not assert merely that petitioner received benefits while its property was annexed to the City; rather, the City also asserted that it made expenditures in reliance on petitioner's representations that it would develop the land (which it did not do) and that petitioner thus should be estopped from disconnecting.

Action Outdoor Advertising, another case relied on by petitioner, is not on point. In that case, the landowners contracted with a sign company to construct an outdoor sign. The village sued the

landowners and the sign company, seeking damages and to enjoin construction on the basis that the construction violated the terms of an annexation agreement that provided for the future annexation of the landowners' property when the property became contiguous to the village. This court upheld summary judgment for the defendants, holding that, although the landowners, as parties to the agreement, had derived substantial contractual benefits from the annexation agreement, equitable estoppel did not apply to preclude the sign company from challenging the validity of the agreement entered into by the village and the landowners. Action Outdoor Advertising, 188 Ill. App. 3d at 760. This court held that the annexation agreement was invalid and unenforceable because it was not authorized by statute. Action Outdoor Advertising, 188 Ill. App. 3d at 760. In rejecting the village's argument that estoppel should apply because the landowners derived contractual benefits from the annexation agreement, this court noted that a municipality's void contract cannot be validated by estoppel. Action Outdoor Advertising, 188 Ill. App. 3d at 760. This court further held that, even if the village had been authorized to enter into the agreement, equitable estoppel would not apply because, although the landowners received water and sewer service, they paid (double the normal rate, as their property was located outside the village limits) for those services. Action Outdoor Advertising, 188 Ill. App. 3d at 760-61.

Petitioner argues that this case is like Action Outdoor Advertising: there was consideration for water and sewer improvements provided by the City; the parties entered into a 10-year annexation agreement; and petitioner's use of the subject property was constrained by the terms of the agreement. Thus, petitioner asserts that, as in Action Outdoor Advertising, estoppel should not apply. We disagree. That case holds that a void contract cannot be validated by estoppel. Here, the validity of the annexation agreement is not at issue. As to the Action Outdoor Advertising court's alternative

reasoning that, even if the contract was valid, estoppel would not apply because the landowners paid for any services they received, the record here does not reflect that petitioner has ever attempted to argue or establish that it expended funds in satisfaction of its responsibilities under the annexation agreement and/or in exchange for the water and sewer improvements the City made thereunder. Accordingly, Action Outdoor Advertising does not support petitioner's position.

Petitioner cites Bank of Waukegan v. Village of Vernon Hills, 254 Ill. App. 3d 24 (1993), for the proposition that any rights and obligations based upon an annexation agreement terminate upon the expiration of the agreement. In Bank of Waukegan, a parcel was annexed to a village pursuant to an annexation agreement. Upon execution of the annexation agreement, the village passed an ordinance annexing the property and another ordinance zoning the land B-1 with a special use for a planned unit development (PUD) for multiple-family residential use. After the expiration of the annexation agreement (i.e., 10 years, pursuant to the annexation statute in effect at the time), the village adopted a comprehensive revision of its zoning code, under which the B-1 zoning classification no longer permitted residential uses, even as special uses. Several developers contracted to purchase the subject property and applied for site plan approval for the construction of two apartment buildings thereon. The village denied the application. The developers sued the village, and, after a trial, the trial court denied the developers relief.

On appeal, this court first addressed whether the special-use permits (bestowed by the zoning ordinance passed upon execution of the annexation agreement) was enforceable after the expiration of the annexation agreement. This court held that the ordinance (and a subsequent ordinance amending the original ordinance) expired with the annexation agreement and that, when the developers sought to develop the property after the expiration of the annexation agreement, "there

existed no special use for a [PUD] on the property." Bank of Waukegan, 254 Ill. App. 3d at 27. The ordinance provided that the village was approving the application to zone certain property, " 'upon the annexation thereof,' " as B-1 with a special use for a PUD. Bank of Waukegan, 254 Ill. App. 3d at 28. This court concluded that the B-1 zoning classification and the special-use permits "were only granted because of promises made in the annexation agreement" and were "provisions" of the annexation agreement. (Emphasis in original.) Bank of Waukegan, 254 Ill. App. 3d at 28. "To allow zoning ordinances implementing an annexation agreement to exceed the statutory maximum term for enforceability of the agreement's provisions negates the intent of the statute." Bank of Waukegan, 254 Ill. App. 3d at 29. This court further explained:

"[H]ere, it was the annexation agreement which bestowed any right to zoning classification or special-use permits, and the ordinances zoning the property and granting those permits were simply the means by which the village was required to meet its obligations under the annexation agreement. [Citation.] We thus believe that the special-use permits were unenforceable after the expiration of the annexation agreement. Consequently, no special-use permits for a [PUD] covered the property at the time the developers sought to construct their apartment complex." Bank of Waukegan, 254 Ill. App. 3d at 30.

This court next addressed whether the developers had a vested right to build on the property based on their expenditure of substantial funds. The developers argued that they expended the funds because the village's zoning code and maps in effect at the relevant time reflected that the property was zoned for a PUD. This court rejected this argument, concluding that the first part of the vested rights test--that there was a probability that municipal approval would issue--was not met because testimony showed that the zoning of the property was not settled when the developers applied for site

plan approval. Bank of Waukegan, 254 Ill. App. 3d at 31-32.

We disagree with petitioner that Bank of Waukegan is fatal to the City's arguments. The City here is not arguing that any terms of the annexation agreement still control. Rather, in response to a disconnection petition, it is raising an affirmative defense, as Gaylor clearly holds it can. The affirmative defense, equitable estoppel, is not based directly on the annexation agreement, such as, for example, a breach of contract claim would be. Nor is it like the ordinances in Bank of Waukegan, which constituted provisions of the annexation agreement that expired with the agreement and were thereafter unenforceable. This distinction is critical.

Petitioner further argues that the City's summary judgment motion was properly denied because subjecting disconnection to equitable arguments would lead to absurd results. If, for example, a municipality can bar property owners from disconnecting due to services and improvements provided pursuant to an annexation agreement, then the agreement would extend indefinitely beyond its terms and in favor of only the municipality. In petitioner's scenario, property would remain annexed until a court equitably determines that the improvements' benefit to the property has been sufficiently amortized through tax payments and depreciation. In petitioner's view, this kind of "equitable morass" is what the legislature sought to avoid by setting forth six "clear" requirements that, if met, compel the trial court to grant disconnection without exercising discretion in weighing equitable concerns. Gaylor, petitioner argues, holds only that the right to disconnect may be waived for the term of an annexation agreement. Applying equitable considerations would blur the standard established by the six statutory factors and reduce them to mere surplusage. Petitioner asserts that the factors themselves determine whether disconnection is equitable and whether it results in hardship or impairment to the municipality.

We disagree with petitioner's arguments. They ignore this court's holding in <u>Gaylor</u>, which petitioner mischaracterizes as holding only that the right to disconnect may be waived for the agreement's term. This is not the case, as <u>Gaylor</u> held that a petitioner must establish <u>both</u> the enumerated statutory factors and that the property is otherwise entitled to disconnection; further, it held that the statute contemplates the interposition of an affirmative defense. <u>Gaylor</u>, 363 Ill. App. 3d at 548-49. We cannot conceptualize how our conclusion that equitable estoppel is available as an affirmative defense would work, as petitioner suggests, to extend indefinitely annexation agreements. Equitable estoppel is defined as "the effect of a person's conduct whereby the person is barred from asserting rights that might otherwise have existed against the other party who, in good faith, relied upon such conduct and has been thereby led to change his or her position for the worse." <u>Geddes v. Mill Creek Country Club, Inc.</u>, 196 Ill. 2d 302, 313 (2001). In our view, the number of disconnection cases in which an equitable estoppel argument might arise is not large, nor would such cases present challenges that Illinois courts are ill-equipped to handle. Further, petitioner's scenario considers only that the petitioners in disconnection proceedings may have received certain municipal services pursuant to annexation agreements. Petitioner fails to mention that the City's claim here is not merely that petitioner's property benefitted from City-funded water and sewer improvements, but that the City was induced to enter into the agreement by petitioner's claim that it would develop the property in exchange for those improvements. Again, we cannot agree that there will be a flood of litigation asserting estoppel under this scenario or that Illinois courts cannot address such claims.

Finally, although estoppel is generally not enforced against governmental bodies except in exceptional circumstances (see 31 C.J.S. <u>Estoppel and Waiver</u> §232 (2009)), it <u>has</u> been utilized in disconnection proceedings as a defense to bar municipalities from asserting public rights when doing

so would be unjust. See, e.g., In re Petition to Disconnect Certain Territory from the City of Palos Heights, 30 Ill. App. 2d 336, 342 (1961). We fail to see the equity in permitting petitioners in disconnection proceedings to assert, in limited cases, estoppel against governmental bodies, but precluding municipalities from doing so against petitioners in proceedings under section 7--3--6 of the Code.

In summary, we conclude that equitable estoppel is available as an affirmative defense in disconnection proceedings under section 7--3--6 of the Code.

### C. Sufficiency of the City's Pleadings

The parties next disagree over the sufficiency of the City's pleading of equitable estoppel. Petitioner asserts that the City has not properly alleged equitable estoppel and that, therefore, this court should affirm the trial court's denial of the City's summary judgment cross-motion. The City argues that this argument is forfeited because it was not raised in the trial court.

Regarding forfeiture, in its answer to the City's affirmative defenses, petitioner essentially denied all of the City's allegations. It did not raise therein the sufficiency of the City's pleadings. Petitioner subsequently moved to strike the City's affirmative defenses. However, in that motion, it argued only that estoppel could not be raised as a defense to defeat a disconnection petition and that the fact that petitioner may have received benefits from the City pursuant to the annexation agreement is not a defense to and does not bar disconnection. Again, petitioner did not challenge the sufficiency of the City's pleadings. The City, however, is incorrect in asserting that petitioner never challenged its pleadings in the trial court. Petitioner challenged the City's pleading of equitable estoppel when it responded to the City's summary judgment cross-motion--specifically in petitioner's combined response to the City's cross-motion and reply in support of its own summary judgment motion.

A party may assert, without forfeiture concerns, affirmative defenses in a summary judgment motion, even after failing to file them in an answer. Medrano v. Production Engineering Co., 332 Ill. App. 3d 562, 570 (2002) ("because a party may file a motion for summary judgment at any time, even before filing an answer, the party may well assert a limitations period defense in its summary judgment motion even though it did not raise it first in an answer"). Thus, a challenge to the sufficiency of the pleading of any affirmative defenses can be raised in a response to a summary judgment motion. There is also authority suggesting that a defective pleading may be brought to the trial court's attention for the first time in a posttrial motion and that the assertion of such error is not forfeited on appeal. See Swager v. Couri, 60 Ill. App. 3d 192, 195 (1978) ("While the [defendant's] post-trial motion *** could have been better drafted, we think that the language was sufficient to give the trial court notice that the [plaintiff's] complaint *** was deficient because it did not allege all the elements of the tort of interference with contractual relations"). Based on this authority, we conclude that petitioner has not forfeited this argument. Thus, we turn next to assessing the City's argument that it adequately pleaded and proved equitable estoppel and that it was entitled to summary judgment on this defense.

## D. The City's Equitable Estoppel Defense

The City contends that its summary judgment motion should have been granted because it properly pleaded equitable estoppel and because the undisputed facts here demonstrate that petitioner should be equitably estopped from disconnecting the subject property from the City. It asserts that petitioner's conduct induced it to provide certain municipal benefits to the subject property in reliance on the annexation agreement.

As the City notes, Illinois courts have defined equitable estoppel in a variety of ways. See,

e.g., Geddes, 196 Ill. 2d at 313 ("the effect of a person's conduct whereby the person is barred from asserting rights that might otherwise have existed against the other party who, in good faith, relied upon such conduct and has been thereby led to change his or her position for the worse"); Board of Trustees of the Addison Fire Protection District No. 1 Pension Fund v. Stamp, 241 Ill. App. 3d 873, 879 (1993) (test is "whether, considering all the circumstances of the particular case, conscience and honest dealing require estoppel"); Wilson v. Illinois Benedictine College, 112 Ill. App. 3d 932, 939 (1983) ("Estoppel refers to reliance by one party on the word or conduct of another so that the party changes his position and subsequently suffers harm").  However, over at least the last 20 years, our supreme court has set forth six elements that must be shown to establish equitable estoppel.  See, e.g., Orlak v. Loyola University Health System, 228 Ill. 2d 1, 21-22 (2007); DeLuna v. Burciaga, 223 Ill. 2d 49, 82-83 (2006); Geddes, 196 Ill. 2d at 313-14; Parks v. Kownacki, 193 Ill. 2d 164, 180 (2000); Vaughn v. Speaker, 126 Ill. 2d 150, 162-63 (1988).  Under this definition, the City must demonstrate that: (1) petitioner misrepresented or concealed material facts; (2) petitioner knew at the time it made the representations that they were untrue; (3) the City did not know that the representations were untrue when they were made and when they were acted upon; (4) petitioner intended or reasonably expected that the City would act upon the representations; (5) the City reasonably relied upon the representations in good faith and to its detriment; and (6) the City would be prejudiced by its reliance on the representations if petitioner is permitted to deny the truth thereof.  See Geddes, 196 Ill. 2d at 313-14.  The City need not show that petitioner intentionally misled or deceived it; "it is sufficient that a fraudulent or unjust effect results from allowing another person to raise a claim inconsistent with his or her former declarations."  Geddes, 196 Ill. 2d at 314.

The City contends that it demonstrated its entitlement to summary judgment because all

equitable estoppel elements were pleaded and established as a matter of law. The City argues that the essence of an estoppel claim is a party's reasonable reliance on the words and conduct of another to that party's detriment. It asserts that, in entering into the annexation agreement, petitioner induced or encouraged the City to construct the improvements for the benefit of the property. The City addresses the specific elements of estoppel. It contends that the first two elements--misrepresentations and petitioner's knowledge of their falsity--were established by petitioner's prior declarations, as evidenced by the annexation agreement and its conduct in annexing into the City. This showed, in the City's view, that petitioner induced or encouraged the City to construct improvements for the benefit of the property. Further, development of the property was extensively negotiated and expressly contemplated in the agreement. As to the third element--the City's lack of knowledge of the falsity of the representations--the City contends that it is undisputed that when it entered into the agreement it was unaware that petitioner would act in a manner contrary to the agreement, as evidenced by its expenditures on water and sewer improvements. The fourth element--that petitioner intended or expected that the City would act upon the representations--is established, according to the City, where the agreement obligated the City to make certain improvements and where petitioner could reasonably anticipate the substantial cost of the improvements. As to the fifth element--the City's good-faith reliance on the representations to its detriment--the City asserts that it is undisputed that the agreement required considerable negotiations and that the City constructed the improvements at substantial cost in reliance on the agreement. Finally, as to the sixth factor--prejudice--the City contends that this element was established by its (unnecessary) expenditure of significant funds, petitioner's failure to develop the land, and the City's loss of benefits therefrom.

Petitioner responds that the City failed to meet its summary judgment burden. It asserts that

the pleadings and evidence the City submitted in support of its motion showed only that there was an annexation agreement imposing obligations on the parties; that one of the City's obligations was to construct water and sewer improvements for the subject property; that the City did so at its own cost; and that the agreement expired five years before petitioner petitioned to disconnect the property from the City. Petitioner contends that equitable estoppel must be established by clear and convincing evidence and that the City's evidence constitutes, at best, mere speculation. Petitioner focuses on the first two elements of equitable estoppel--a misrepresentation or concealment and knowledge of the falsity of any misrepresentation--and argues that the City has failed to both adequately plead and establish as a matter of law any misrepresentations or fraudulent conduct on petitioner's part.

Preliminarily, we note that petitioner is correct that equitable estoppel must be established by clear and convincing evidence. However, such proof is not necessary to survive a summary judgment motion. "The purpose of summary judgment is *** to determine whether a triable issue of fact exists." Luu v. Kim, 323 Ill. App. 3d 946, 952 (2001). A plaintiff need not prove its case to survive summary judgment, but it must present some factual basis that would support its claim. Schrager v. North Community Bank, 328 Ill. App. 3d 696, 708 (2002).

We conclude that the City's summary judgment motion was properly denied and that summary judgment was properly entered in petitioner's favor. The City failed to adequately plead and establish as a matter of law at least the first two elements of estoppel--a misrepresentation and knowledge of its falsity. As to these elements, the City alleged only that the annexation negotiations and resulting agreement constituted an inducement and that, ultimately, the property was never developed. We cannot conclude that petitioner's failure to develop the property, without more, indisputably shows that, when it entered into the annexation agreement, petitioner never intended to develop it. This

allegation, as it is, and the evidence in support thereof--the annexation agreement and the affidavit averring to the funds the City expended--do not even raise a factual question to be resolved at trial, as they fail to adequately allege any misrepresentation or concealment. Further, the fact that the property was never developed does not, in our view, adequately establish as a matter of law the falsity of any representations concerning the property's development. The City has never alleged that the annexation agreement even bound petitioner to develop the property. Accordingly, the trial court did not err in denying the City's motion for summary judgment. Further, as the City does not contest that petitioner established below that it satisfied the six statutory requirements, we conclude that the court did not err in granting petitioner's motion for summary judgment.

Finally, we note again that the City does not challenge on appeal the trial court's findings concerning the six statutory requirements for disconnection. Thus, we need not consider the fact that a disconnection would create what is essentially a hole near the northern edge of the City's corporate limits, nor do we consider as unduly prejudicial the City's loss of future tax revenue.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

O'MALLEY and SCHOSTOK, JJ., concur.