THIRD DIVISION
March 31, 2011

No. 1-10-3822

| | | |
|---|---|---|
| CHRISTIAN ASSEMBLY RIOS DE AGUA VIVA, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| THE CITY OF BURBANK, ILLINOIS, | ) | Honorable |
| | ) | Michael Hyman, |
| Defendant-Appellee. | ) | Judge Presiding. |

PRESIDING JUSTICE QUINN delivered the judgment of the court, with opinion.

Justices Murphy and Steele concurred in the judgment and opinion.

**OPINION**

Plaintiff, Christian Assembly Rios de Agua Viva, appeals from an order of the circuit court denying its emergency motion for a preliminary injunction seeking a declaration that it may operate a church on property that it has a contract to purchase, notwithstanding the City of Burbank's zoning ordinance that does not permit such use. For the reasons set forth below, we affirm the circuit court.

I. BACKGROUND

Christian Assembly Rios de Agua Viva (church) is a church with a largely Hispanic membership that currently meets at 6132 South Kedzie Avenue on the south side of Chicago, Illinois. Due to its growing congregation, the church decided to look for a larger building in the

1-10-3822

south suburbs, where many of its members reside. The church found a suitable property at 8100 South Parkside Avenue in Burbank, Illinois, the site of a former restaurant called The Old Barn, which is now in bankruptcy. On August 12, 2010, the church entered into a real estate contract with the trustee in bankruptcy to purchase the property for $900,000. The church paid $50,000 in earnest money, as required by the contract, $10,000 of which became nonrefundable on November 29, 2010. The contract contained a zoning contingency, which provided as follows:

"Buyer shall have one hundred twenty (120) days from the Contract Date to determine the zoning classification for the premises and, if necessary, to obtain a zoning change to allow the premises to be used as a church.

Buyer shall have the right to extend the Governmental Approval Period two (2) times for periods of thirty (30) days each upon written notice to Seller from Buyer given within said Governmental Approval Period (as the same may have been previously extended) accompanied by the deposit with escrowee of the sum of Fifteen Thousand and No/100 Dollars ($15,000) of additional earnest money for each such extension. Fifty percent (50%) of each additional earnest money deposit shall become nonrefundable upon deposit; however one hundred percent (100%) of each additional earnest money deposit shall be applied to the Purchase Price at closing.

If Buyer for any reason is not satisfied with the zoning, Buyer may, upon written notice given to seller within the Governmental Approval Period (as the same may have been previously extended), terminate this Contract and receive back the earnest money

1-10-3822

(except non-refundable portions as provided herein)."[1]

The church has obtained a commitment for a $600,000 mortgage loan, which also can be withdrawn if the church cannot obtain proper zoning.

At the time the church signed the contract, the property in question was zoned "C" commercial district under the City of Burbank's zoning ordinance. The zoning ordinance included 114 permitted uses in the C district, many of which were business and retail in nature. However, several "service" uses were also permitted in the C district, including "business associations," "labor associations," "civic, social and fraternal associations," and "political organizations." Churches, however, were not a permitted use in a C district and were allowed only as a "special use." Under section 6-1 of the zoning ordinance, special uses are uses "that may or may not be appropriate in a particular location depending on a weighing in each case of the public need and benefit against the local impact and effect." In order to obtain a special use permit, a property owner must make an application, submit to a public hearing, and establish that the proposed use meets several specific criteria set forth in the ordinance.

On October 7, 2010, the church submitted an application for a special use permit to the city along with a letter stating that it had a legal right pursuant to the equal protection clause of the Illinois Constitution (Ill. Const. 1970, art. I, §2) and the Illinois Religious Freedom Restoration Act, (775 ILCS 35/15 (West 2008)) to locate a church on the property.

---

[1]The trustee in bankruptcy and the church agreed to change the contract date from August 12, 2010 to September 30, 2010. Therefore, the church had until January 28, 2011, to obtain zoning approval from the city and the two 30-day government approval periods expire on February 27, 2011, and March 29, 2011.

1-10-3822

On November 18, 2010, the city published a notice of public hearing regarding a proposed amendment to its zoning ordinance, which would limit permitted and special uses in the C commercial district "to commercial retail stores, service establishments, and professional offices that generate tax revenues, maintain the City's tax base and allow for convenient locations for the public to shop, obtain services and conduct businesses." The notice stated that "all tax exempt uses, residential uses and uses otherwise permitted or allowed as special use in a residential zoning classification are proposed to be prohibited." The proposed amended ordinance, however, would permit noncommercial assembly uses, including churches, in residential zoning districts.

On December 7, 2010, the city's zoning, planning and development commission heard the church's special use permit application. Following the public hearing, the commission recommended against granting a special use permit to the church because of the "lack of tax revenue" the proposed use would generate.

On December 13, 2010, plaintiff filed a seven-count declaratory judgment action in the circuit court of Cook County alleging, *inter alia*, that in denying its special use permit application, the city violated (1) the equal protection clause and the church's right to free exercise of religion under the Illinois Constitution; (2) section 15 of the (775 ILCS 35/15 (West 2008)), (3) the church's vested right to use the property as a church, and (4) section 5(a)(2) of the Illinois Civil Rights Act of 2003 (740 ILCS 23/5(a)(2) (West 2008)). The next day, December 14, 2010, the church filed an emergency motion for a temporary restraining order/preliminary injunction asking that the trial court (1) declare that the church has a legal right to use the property as a church notwithstanding the zoning ordinance; (2) grant an injunction against the city and its agents from

enforcing its zoning code and from preventing plaintiff from using the property as a church; and (3) requiring the city to immediately permit the church to use the property as a church. The trial court held a hearing on that same day and denied the plaintiff's motion.

On December 15, 2010, the city adopted Ordinance No. 35-12-10, "An Ordinance Providing for a Comprehensive Amendment to the Burbank Zoning Code for the City of Burbank, Cook County, Illinois," which prohibits any noncommercial use from locating in the C district. On December 29, 2010, the plaintiff filed a notice of interlocutory appeal of the trial court's order denying its emergency motion for a preliminary injunction.

## II. ANALYSIS

To establish entitlement to preliminary injunctive relief, a plaintiff must show (1) a clearly ascertainable right in need of protection, (2) that he will suffer irreparable harm without protection of that right, (3) that there is no adequate remedy at law, and (4) that there is a substantial likelihood of success on the merits of the underlying action. *Caro ex rel. State v. Blagojevich*, 385 Ill. App. 3d 704, 708 (2008). Generally, an abuse of discretion standard of review applies, but when, as here, the case raises pure questions of law, the determination of the merits of the permanent injunction is subject to *de novo* review. *Kopchar v. City of Chicago*, 395 Ill. App. 3d 762, 773 (2009).

The primary issue raised in this appeal is whether the church has a substantial likelihood of success on the merits of its underlying action. The parties agree that under the city's recently amended zoning ordinance, a church is not a permissible use on the property in question. Plaintiff argues, however, that it has a vested right to use the property in accordance with the provisions of

the preamended zoning ordinance, which permitted churches as a special use in a C commercial district. Defendant argues that plaintiff does not have a vested right in the preamended zoning statute and that since a church is not a permitted use in a C district, the trial court did not err in denying plaintiff's motion for a preliminary injunction.

The general rule is that a landowner has no right to continuation of an existing zoning classification. *1350 Lake Shore Associates v. Healey*, 223 Ill. 2d 607, 615 (2006). However, there is an exception to this rule, referred to as the "vested-rights" doctrine, which our supreme court has described as follows:

> " '[W]here there has been a substantial change of position, expenditures or incurrence of obligations made in good faith by an innocent party under a building permit or in reliance upon the probability of its issuance, such party has a vested property right and he may complete the construction and use of the premises for the purposes originally authorized, irrespective of subsequent zoning or a change in zoning classification.' " *Healey*, 223 Ill. 2d at 615 quoting *People ex rel. Skokie Town House Builders, Inc. v. Village of Morton Grove*, 16 Ill. 2d 183, 191 (1959)).

Therefore, in order for a landowner to invoke the vested-rights rule, " 'he must show (1) that there was a 'probability' that [municipal approval] would issue and (2) that a substantial change in position was incurred based upon this probability.' " *Bank of Waukegan v. Village of Vernon Hills*, 254 Ill. App. 3d 24, 31 (1994) (quoting *People ex rel. Shell Oil Co. v. Town of Cicero*, 11 Ill. App. 3d 900, 904 (1973)). Here, the plaintiff expended more than $40,000 in trying to purchase the property and obtain a special use permit, which would likely constitute a

"substantial change of position." Therefore, the primary question this court must answer is whether there was a probability that the City of Burbank would approve plaintiff's request to use the property as a church under the language of the preamended zoning ordinance.

This court has held that "a probability that approval is forthcoming exists when the property at issue is zoned to permit the use requested by the landowner." *Bank of Waukegan*, 254 Ill. App. 3d at 31 (citing *Town of Cicero*, 11 Ill. App. 3d at 904, citing *Cos Corp. v. City of Evanston*, 27 Ill. 2d 570 (1963)). For instance, in *Bank of Waukegan* land developers entered into a contract to purchase property with the intention of building apartments. Although the property had at one time permitted multifamily residential use, when the contract was signed, that use was no longer permitted. The Second District Appellate Court affirmed the trial court's finding that the developers had no vested right to build apartments on the property because such use was not permitted under the zoning code that was in effect when the developers entered into the contract. *Bank of Waukegan*, 254 Ill. App. 3d at 31. Similarly, in this case when plaintiff entered into the contract to purchase the site of The Old Barn restaurant, the property was zoned as C commercial district, in which a church would be allowed only if the city granted a special use permit. Although there was a *possibility* that the city could grant plaintiff's request to conduct church services on the property, since such use was not a permissible use under the zoning ordinance, plaintiff did not have a reason to believe that the city *probably* would permit such use.

Plaintiff argues, however, that it has satisfied the "probability of the issuance of a building permit" requirement of the vested-rights doctrine because the preamendment ordinance, which permitted churches only as a special use while allowing other forms of nonreligious assembly,

1-10-3822

including business, labor and political associations as a permitted use, violated Illinois law and, therefore, was not enforceable. In particular, plaintiff contends that the equal protection clause of the Illinois Constitution (Ill. Const. 1970, art. I, §2) prohibits the city from treating a church differently from other assembly uses absent a compelling government interest and that the city's preamended ordinance violated section 15 of the (775 ILCS 35/15 (West 2008)), which prohibits the government from substantially burdening a person's exercise of religion, absent a showing that the burden furthers a compelling governmental interest and is the least restrictive means of furthering that interest. In effect, plaintiff argues that it believed that the city's preamendment zoning ordinance violated Illinois law and could be successfully challenged, and therefore, there was a probability that a building permit would be issued.

An analogous argument was raised in *City of Elgin v. All Nations Worship Center*, 369 Ill. App. 3d 664 (2006), and rejected by the Second District Appellate Court. In *All Nations*, the defendant church was conducting services on property it leased in Elgin in an AB area business district, where churches were not allowed as a permitted or conditional use under the city's zoning ordinance. After All Nations applied for and was denied a planned unit development permit, the city filed a complaint alleging that All Nations was violating the ordinance. *All Nations*, 369 Ill. App. 3d at 665-66. All Nations filed a counterclaim arguing that the zoning ordinance was unconstitutional in that it denied it equal protection by excluding churches from the AB district while allowing other similar, nonreligious uses such as membership organizations and sports and recreation clubs. All Nations also alleged that the ordinance violated the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA) (42 U.S.C. §2000cc *et seq.*

-8-

1-10-3822

(2000)), which requires that municipal zoning not discriminate against churches and not unreasonably limit religious assemblies within a jurisdiction (42 U.S.C. §§2000cc(b)(1), (b)(2), (b)(3)(B) (2000)). *All Nations*, 369 Ill. App. 3d at 666.

In the interim, the city amended its zoning ordinance to provide that churches could be permitted as a conditional use in RB residence business districts, NB neighborhood business districts, and AB area business districts. Similar nonreligious uses would also have to apply for a conditional use permit in those districts. The city then moved to dismiss All Nations' counterclaims arguing that any defects in the zoning ordinance were cured by the amendment. The trial court agreed and dismissed the counterclaims. On appeal, All Nations did not dispute that the amendment cured perceived problems with the zoning ordinance but argued that the trial court erred in dismissing its counterclaims, because prior to the amendment it acquired a vested right to continue to operate without obtaining a conditional use permit. All Nations contended that because the zoning ordinance was unconstitutional before the amendment, it should be treated as though it never existed and All Nations should be permitted to use the property any way it wished. *All Nations*, 369 Ill. App. 3d at 666.

The Second District Appellate Court found a "fatal flaw" in All Nations' arguments in part because "vested rights are acquired by attempting to comply with an ordinance as written." *All Nations*, 369 Ill. App. 3d at 668. The court stated that "when a party expends substantial time and effort attempting to comply with an ordinance as it exists and the legislative body amends the ordinance, the party may acquire a vested right to proceed under the old ordinance. [Citation.] Here, however, All Nations proceeded *in violation* of the zoning ordinance as written. It is

-9-

difficult to see how All Nations can claim a vested right to ignore the existing ordinance." *All Nations*, 369 Ill. App. 3d at 668. Further, the court stated, "the existence of an ordinance is a historical fact that cannot simply be ignored. While a party may have a right to assume that an ordinance is valid and proceed accordingly, it has no corresponding right to do the contrary: to assume that the ordinance is invalid and proceed in violation of it." *All Nations*, 369 Ill. App. 3d at 669.

Similarly, in this case, the plaintiff knew when it entered into the contract with the bankruptcy trustee that the property was zoned C commercial district and that churches were only allowable as a special use and not as a permitted use in that district. Plaintiff decided to assume the ordinance was invalid and proceeded, at its own risk, to enter into a contract and expend funds to purchase the property for use as church. If plaintiff had done so in compliance with the ordinance, it might be able to claim a vested right in the old ordinance, but as the court held in *All Nations*, a party does not have a vested right to assume that the ordinance was invalid and proceed in violation of it.

Plaintiff contends that the holding in *All Nations* was repudiated by our supreme court in an opinion issued one day later in *1350 Lake Shore Associates v. Healey*, 223 Ill. 2d 607 (2006), and therefore, we should ignore it. In *Healey*, a landowner wanted to construct a 40-story, 196-unit apartment building on its property, which was a permitted use under the zoning ordinance. When the property was subsequently rezoned to no longer permit a high-rise building, the landowner petitioned for a writ of *mandamu*s directing the city's commissioner of the department of planning and development to issue an approval letter for a high-rise residential development.

The trial court found that in discussions with the alderman of the ward in which the property was located, plaintiff learned that the property might be rezoned and, therefore, could not assert that there was a probability that the city would approve its request to construct an apartment building. After the appellate court affirmed, our supreme court reversed and remanded to the trial court, finding that the mere fact that the landowner was aware that the zoning ordinance might be amended does not preclude its expenditures from being in good faith, as would support its vested rights argument.

We disagree with plaintiff's assertion that *Healey* repudiates *All Nations*. In *Healey*, an apartment building was a permitted use at the time the plaintiff sought to develop the property, and the supreme court rejected the trial court's finding that once a landowner learns that the zoning ordinance might be changed, he can longer rely in good faith on the probability that a zoning certificate will be issued. Conversely, in this case, a church was not a permitted use under the statute, so at no time could the plaintiff rely in good faith on the probability that the city would approve such use.

We also note that in *Petra Presbyterian Church v. Village of Northbrook*, 489 F.3d 846 (7th Cir. 2007), the Seventh Circuit Court of Appeals rejected an argument that is analogous to the argument raised by plaintiff in this case. In *Petra*, a church, with a primarily Korean-American membership, signed a contract to purchase property in the Village of Northbrook containing a warehouse and office building that it wanted to convert into a church and classrooms. The contract was made contingent on the plaintiff being permitted to use the property as a church. The property was located in an industrial zone that permitted membership organizations, such as

community centers, fraternal associations and political clubs, but prohibited churches.  A church would only be permitted if the village would agree to rezone the property to "institutional buildings" and issue a special use permit.  Petra filed a formal application with the village's board of trustees for rezoning and a special use permit.  The board recommended that the application be denied but before it issued a formal denial, Petra withdrew its application.  Petra then purchased the property and began using it as a church.  *Petra*, 489 F.3d at 848.

Meanwhile, due to concerns that its zoning ordinance violated the RLUIPA, the village amended its zoning ordinance to ban all membership organizations, not just churches, from the industrialized zone.  Shortly thereafter, the village sought and was granted a preliminary injunction against the church in state court on the grounds that the church was violating the village's building code.  The church then filed suit in federal court, arguing that by prohibiting it from operating a church on the property, the village violated the RLUIPA.  *Petra*, 489 F.3d at 848.  As in the instant  case and *All Nations*, the plaintiff argued that it had a "vested right" to operate its warehouse as a church.  The court acknowledged that "[a] doctrine of Illinois law allows in some circumstances a land use to continue after a zoning change that would ban it, [citation], but only if the use was authorized by the zoning ordinance as it stood before the change." *Petra*, 489 F.3d at 848.  The court concluded "that is not the case here." *Petra*, 489 F.3d at 848.  The court noted that the district court relinquished jurisdiction over Petra's Illinois vested-rights claim but stated that in doing so, the court did Petra "a favor *** because if it were before us, we would reject it on the merits, as a misreading of Illinois law." *Petra*, 489 F.3d at 848.

1-10-3822

The court noted that Petra alternatively argued for a federal vested-rights doctrine, asserting that "when it bought the property it was reasonably relying on the invalidity of the 1988 ordinance, which arbitrarily treated religious membership organizations worse than other membership organizations, thus violating not only RLUIPA but also the free-exercise clause of the First Amendment." *Petra*, 489 F.3d at 848-49. In rejecting this argument, the court stated:

"We cannot find any basis, whether in cases or other conventional sources of law, or in good sense, for the proposition that the federal Constitution forbids a state that has prevented a use of property by means of an invalid (even an unconstitutional) enactment to continue to prevent that use by means of a valid one. ***

*** If the 1988 ordinance violated RLUIPA, as Northbrook comes close to conceding, Petra didn't have to comply with it. But that doesn't mean that it acquired an immunity from *all* zoning regulation. It knew or should have known that Northbrook could redo its ordinance to comply with the 'less than equal terms' provision of RLUIPA in one of two ways: by permitting religious organizations in the industrial zone, or by forbidding all membership organizations in the zone. Petra could not reasonably assume that the Village would choose the first option. And since it therefore did not *reasonably* rely on the illegality of the 1988 ordinance in going ahead and buying the property, but instead assumed the palpable risk that a new, valid ordinance would continue the ban on its desired use of the property, it has no ground for blocking the Village from enforcing the amended ordinance against it, on the theory that the Village pulled the rug out from under it by changing the ordinance." (Emphasis in original.) *Petra*, 489 F.3d at 849.

-13-

1-10-3822

In this case, as in *Petra*, the church could not reasonably rely on the illegality of the preamendment zoning ordinance when entering into a contract and expending money in an effort to purchase the property. Nor could it assume that if the city amended its ordinance, it would decide to permit a church on the property rather than prohibit all noncommercial uses, as it did. It is true, as plaintiff asserts, that *Petra* does not directly address Illinois's vested rights law because as the court stated, the federal district court relinquished jurisdiction over that issue. However, the reasoning in that case is persuasive and supports our finding that in this case the church could not claim a vested right in the city's preamended zoning ordinance.

We also note that, as in *Petra*, in this case the church's contract to purchase the property was made contingent upon the church obtaining proper zoning. Although this is not definitive on the probability issue, it belies the church's argument that it believed that there was a probability that the city would issue a special use permit and is further evidence that the church at least thought there was a likelihood that it would not allowed to use the property as a church.

Lastly, we address plaintiff's argument that it is entitled to use the property as a church because the city's new zoning ordinance, enacted on December 15, 2010, violates the congregations' rights under the section 5(a)(2) of the Illinois Civil Rights Act of 2003 (740 ILCS 23/5 (West 2008)). That statute provides, in part, that "No unit of State, county or local government in Illinois shall: *** (2) utilize criteria or methods of administration that have the effect of subjecting individuals to discrimination because of their race, color, national origin, or gender." 740 ILCS 23/5(a)(2) (West 2008). Plaintiff contends that the *effect* of the city's zoning ordinance is to exclude Hispanic church members from their right to locate a church on the

-14-

property in question. We disagree. The provision of the zoning ordinance at issue in this case excludes from the C commercial district not only churches, but any secular assemblies, such as business, labor, and political associations, and only permits uses that will produce taxable income, which has been deemed to be a legitimate goal of a zoning ordinance. See *River of Life Kingdom Ministries v. Village of Hazel Crest, Illinois*, 611 F.3d 367, 373 (7th Cir. 2010) (stating that generating tax revenue is a legitimate concern of land-use regulation). Therefore, because churches, regardless of the makeup of their congregation, as well as all other nonrevenue-producing organizations, are prohibited in a C commercial district, the amended ordinance does not demonstrate discrimination based on race, color or national origin.

Because plaintiff failed to establish that there was a "probability" that the city would approve its request to use the property as a church, it did not have a vested right to do so, and the trial court did not err in denying its motion for a preliminary injunction. We note that the real estate contract signed by the plaintiff permits it to terminate the contract if it is not satisfied with the zoning and receive back its earnest money less the nonrefundable portions. Although it is true, as the church asserts, that it will have forfeited a fair amount in earnest money, as well as legal fees and other expenses, that is a risk that it undertook when it entered into a contract to purchase property that was not zoned for use as a church.

## III. CONCLUSION

For the foregoing reasons, we affirm the circuit court.

Affirmed.

1-10-3822