In the

# United States Court of Appeals

### For the Seventh Circuit

No. 16-1989

CHICAGO JOE'S TEA ROOM, LLC and PERVIS CONWAY,

*Plaintiffs-Appellants*,

*v.*

VILLAGE OF BROADVIEW, et al.,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 07-CV-2680 — **John Z. Lee**, *Judge*.

ARGUED SEPTEMBER 8, 2017 — DECIDED JUNE 29, 2018

Before MANION, KANNE, and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. For the last eleven years, the parties to this appeal have litigated a land contract that never closed and a strip club that never opened. Yet this appeal is still an interlocutory one. We conclude that the claim for injunctive relief that gives us appellate jurisdiction is actually moot, and we affirm its dismissal. Along the way to that conclusion, we address a tangled record of transactions that seem

designed to conceal the real parties in interest and their sub-
stantive deals, and we decide issues of appellate jurisdiction,
standing, and the law of the case.

I.  *Factual and Procedural Background*

Plaintiff Chicago Joe's Tea Room, LLC, was formed to op-
erate not a tea room but a strip club, in a small, near-west sub-
urb of Chicago that does not want one. The paper trail of legal
entities, abandoned transactions, and apparently illusory ob-
ligations in this case makes for a dense record. We sketch the
essential facts at the outset and provide more detail in dis-
cussing specific issues.

The story begins in 2006 when plaintiff Pervis Conway
contracted to sell land in the Village of Broadview to David
Donahue. Donahue has never been a party to this lawsuit. Do-
nahue assigned the land contract to Chicago Joe's Tea Room,
LLC. Joseph Inovskis (who also has never been a party to this
lawsuit) was Chicago Joe's sole manager. He applied for the
special-use permit needed to operate a strip club on the prop-
erty. Broadview denied the application in 2007. The land sale
agreed to in the contract between Conway and Chicago Joe's
Tea Room, LLC, has never closed, and the planned club, Chi-
cago Joe's Tea Room, has never opened.

Chicago Joe's Tea Room, LLC and Conway (collectively,
"Chicago Joe's") filed this suit in 2007 alleging that Broadview
violated the First Amendment. Chicago Joe's sought: (1) a dec-
laration that certain Broadview ordinances are unconstitu-
tional, (2) "such further relief pursuant to 28 U.S.C. § 2202 as
this Court may deem appropriate, including requiring issu-
ance of any necessary licenses or permits for Plaintiff
CHICAGO JOE'S and CONWAY to use its property in the

manner it seeks," (3) an injunction blocking Broadview from enforcing its ordinances, and (4) damages and attorney fees.

Under Broadview's zoning ordinance, Chicago Joe's needed to apply for and be granted a special-use permit to operate a strip club there. Broadview also categorized strip clubs as "adult businesses" and used a separate adult-use zoning ordinance to regulate their placement. Broadview amended its ordinances multiple times during the lawsuit, so the district court has faced a moving target. One of those amendments led the district judge presiding over the first round of summary judgment, Judge Gottschall, to conclude that Broadview's amendment to its adult-use setback ordinance was "aimed solely at Chicago Joe's." *Chicago Joe's Tea Room, LLC v. Village of Broadview* (*Chicago Joe's I*), No. 07 C 2680, 2008 WL 4287002, at *6 (N.D. Ill. Sept. 11, 2008).

After the case was transferred from Judge Gottschall to Judge Lee in 2012, the parties litigated a third round of summary judgment motions. Broadview also moved for reconsideration of Judge Gottschall's ruling from the first round of summary judgment and incorporated by reference its arguments on that motion into its motion for summary judgment. Judge Lee granted the motion to reconsider and granted Broadview's motion for summary judgment on Chicago Joe's declaratory judgment and injunction claims, but denied Broadview's motion for summary judgment on the damages claim. *Chicago Joe's Tea Room, LLC v. Village of Broadview* (*Chicago Joe's II*), No. 07-cv-2680, 2016 WL 1270398, at *9 (N.D. Ill. Mar. 31, 2016). Chicago Joe's has appealed that order but limited its arguments on appeal to the denials of injunctive relief.

II.  *Analysis*

This appeal presents a series of issues. We begin with appellate jurisdiction, which we have. We then move to the district court's subject-matter jurisdiction over the claims over which we have appellate jurisdiction, and we examine both standing and mootness. We conclude by considering the application of the law-of-the-case doctrine.

The decisive issue of mootness turns on the limits of the vested-rights doctrine of Illinois law and a recently amended state statute that prevents Chicago Joe's from operating a strip club anywhere in Broadview. The Illinois vested-rights doctrine can be used to recognize property rights to use property in established or planned ways even when state or local law changes to prohibit those uses. Under the doctrine, though, a property owner's claims must be based on a timely assertion of a right to use the property in a way that is actually allowed by law. See *City of Elgin v. All Nations Worship Ctr.*, 860 N.E.2d 853, 856–57 (Ill. App. 2006). The vested-rights doctrine cannot help plaintiffs here because the undisputed facts show that at every stage of the process through the district court's decision, Chicago Joe's has proposed to use the property in a way prohibited by then-current local law. And since 2007, Chicago Joe's has been proposing to use the property in a way prohibited by an Illinois statute, yet without challenging that statute.

A.  *Appellate Jurisdiction*

We have jurisdiction over this interlocutory appeal because the district court's order granted summary judgment for Broadview on all of Chicago Joe's equitable claims. With a few key exceptions, federal courts of appeal can review only

final judgments, but 28 U.S.C. § 1292(a)(1) permits an interlocutory appeal of an order refusing an injunction. We construe the statute narrowly, as a limited exception. E.g., *Albert v. TransUnion Corp.*, 346 F.3d 734, 737 (7th Cir. 2003) ("Therefore, we approach the § 1292(a)(1) exception 'somewhat gingerly lest a floodgate be opened' that would deluge the appellate courts with piecemeal litigation."), quoting *Gardner v. Westinghouse Broadcasting Co.*, 437 U.S. 478, 481–82 (1978). In *Albert*, we said that interlocutory appeals "represent a continuum" with unreviewable orders not denying any injunctive relief at one end and reviewable orders denying all injunctive relief at the other end. *Id.* at 739.

This appeal falls toward the reviewable end of that continuum, at least in this circuit. Even though the district court denied summary judgment on the damages count, it granted summary judgment for Broadview on the two counts requesting equitable relief. *Chicago Joe's II*, 2016 WL 1270398, at *9. So the order "stripped the case of its equitable component," which we have held is sufficient to allow an interlocutory appeal based on the denial of injunctive relief. *Holmes v. Fisher*, 854 F.2d 229, 230 (7th Cir. 1988). Chicago Joe's has limited its appellate arguments to the injunction issues, so we need not worry here about what narrow vestiges remain of pendent appellate jurisdiction. See *Swint v. Chambers County Comm'n*, 514 U.S. 35 (1995); *Abelesz v. OTP Bank*, 692 F.3d 638, 647 (7th Cir. 2012).

Even with those limits, appeals like this one call for jurisdictional caution. *Holmes* held that irreparable harm is not required for appellate jurisdiction for an interlocutory appeal of an order denying an injunction. "Asking whether an order plainly denying an injunction *also* caused irreparable injury

would add a gratuitously complicating factor to the simple statutory rule. We therefore … hold that an order denying injunctive relief is immediately appealable even though a request for damages remains pending." 854 F.2d at 232. But allowing interlocutory appeals from grants of summary judgment for defendants on permanent injunction claims invites piecemeal appeals. That is especially true in cases like this one, where parties appeal after years of litigation and without ever having asked for a preliminary (i.e., interlocutory) injunction. Nevertheless, under the logic of *Holmes* and the substantial authority it relied upon, we have jurisdiction over this appeal.[1]

B. *District Court's Jurisdiction Over Equitable Claims*

We now turn to the district court's subject-matter jurisdiction over the claims properly before us, those seeking injunctive relief. (We see no basis to question the court's jurisdiction over the rest of the case.) The question of subject-matter jurisdiction here lies close to the sometimes blurry line between standing and mootness, which has sometimes been called "the doctrine of standing set in a time frame," *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000), quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997), and the merits of the

---

[1] Our approach has been criticized and, in a proper case, may need a fresh look. See 16 Wright & Miller, Federal Practice and Procedure § 3924.1 (3d ed.) (comparing different circuits' approaches and concluding that "these considerations suggest that ordinarily § 1292(a)(1) appeals should be limited to orders refusing express requests for preliminary injunctions. Routine appeal from interlocutory orders that narrow or deny permanent relief is unwarranted.").

claims. We conclude that at least plaintiff Conway had standing to seek injunctive relief at earlier stages of the case, but that a new Illinois statutory amendment that plaintiffs have not challenged renders their claims for injunctive relief moot. A court could not grant them the relief they seek from the Village of Broadview.

### 1. *Standing*

The standing of Chicago Joe's Tea Room, LLC itself is at least doubtful, especially in view of the obscure trail of contracts, trusts, and illusory commitments, but we need not wrestle those issues to the ground. The other plaintiff-appellant, Conway, had standing, at least at earlier stages of the case. "As long as there is 'at least one individual plaintiff who has demonstrated standing to assert these rights as his own,' a court 'need not consider whether the other ... plaintiffs have standing to maintain the suit.'" *Bond v. Utreras*, 585 F.3d 1061, 1070 (7th Cir. 2009), quoting *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264 & n.9 (1977).

Standing requires three elements, and Conway satisfied all three. "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992), and *Friends of the Earth*, 528 U.S. at 180–81. Additionally, a plaintiff must have standing for each form of relief sought. E.g., *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017) ("At least one plaintiff must have standing to seek each form of relief requested in the complaint."); *Laurens v. Volvo Cars of North America, LLC*, 868 F.3d 622, 625 (7th

Cir. 2017) ("an individual plaintiff 'bears the burden of show-ing that he has standing for each type of relief sought'"), quot-ing *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

It is undisputed that Conway owned the property when Broadview denied the application for a special-use permit and that Conway still owns the property.[2] The original con-tract between Chicago Joe's and Conway was contingent not on Chicago Joe's actually obtaining zoning approval but on its being satisfied that it *could* obtain that approval. Broadview's denial killed the deal—at least as the parties originally envi-sioned it. The evidence of that result means that Conway has offered evidence of a concrete, actual injury traceable to Broadview's conduct and redressable by all three forms of re-lief sought in the complaint. See *Parvati Corp. v. City of Oak Forest*, 630 F.3d 512, 516 (7th Cir. 2010) (property owner had

---

[2] On August 9, 2007, Conway and the State Bank of Countryside as Trustee under Trust No. 072982 executed "Articles of Agreement for Deed." In that contract, Conway agreed to deed the property to the trust following receipt of all payments from the trust. The agreement provided for a quitclaim deed and a warranty deed to be tendered at the initial clos-ing and held in escrow until the trust performed all of its obligations under the agreement. In the district court, Broadview did not dispute that Con-way owned 2850 Indian Joe Drive "at all times relevant herein." But Broadview also attempted to designate the Articles of Agreement for Deed as evidence that Conway sold the property, which Chicago Joe's disputed. Broadview did not designate any evidence to show that the deeds refer-enced in the Articles of Agreement for Deed ever changed hands or that the sale ever closed. Without that evidence, the record contradicts Broad-view's assertions in its appellate brief, at oral argument, and again in its post-argument submission that the property was sold and that Conway has no ownership interest in the property. In its post-argument submis-sion, Chicago Joe's told this court that the sale "has not yet closed." As far as we can tell, the record supports that claim.

standing at outset of litigation because city's denial of buyer's zoning application "scuttled the … deal and prevented the sale" but later lost standing by selling property).[3] Unlike the seller in *Parvati*, Conway still has standing because he still owns the property—even though he entered into a different contract with another buyer that purports to lease the property to Chicago Joe's and even though all of the nominal rent is supposedly "due and owing."

### 2. *Mootness*

Judge Lee correctly held that plaintiffs' injunction claims are moot. Because mootness is a jurisdictional issue, not a merits issue, Broadview should have raised its jurisdictional arguments as a motion under Rule 12(b)(1), not Rule 56. See *Winslow v. Walters*, 815 F.2d 1114, 1116 (7th Cir. 1987) ("Seeking summary judgment on a jurisdictional issue, therefore, is the equivalent of asking a court to hold that because it has no

---

[3] All three forms of relief would redress the injury the ordinances allegedly impose on Conway. A declaration that the ordinances violated the First Amendment would remove an impediment to a sale for a buyer like Chicago Joe's who intended a use prohibited by the ordinances. Enjoining Broadview from enforcing its ordinances would have a similar effect. Damages based on the abandoned sale could also redress Conway's injury.

Although the complaint seems to frame the damages request primarily from Chicago Joe's perspective, the complaint states that *both* plaintiffs seek $10 million in damages. The complaint does not explain the nature of Conway's damages. Its references to a singular plaintiff imply that the damages for Conway would be different than the damages for Chicago Joe's. The complaint alleges that the permit denial "deprived Plaintiff of its investment in [the] property, and has also deprived it of the profits it would have earned had Plaintiff been able to use its property for the purposes it desires."

jurisdiction the plaintiff has lost on the merits. This is a nonsequitur."), citing *Exchange Nat'l Bank v. Touche Ross*, 544 F.2d 1126, 1130–31 (2d Cir. 1976).[4] The distinction matters because the *res judicata* effect of a dismissal for lack of jurisdiction is limited to the jurisdictional issue. *Id.* (At the same time, a defendant challenging jurisdiction need not accept as true the allegations in the complaint and may ask the court to decide the jurisdictional issue by considering additional documents and affidavits, which makes the motion look a lot like a summary judgment motion, or by holding an evidentiary hearing and making factual findings. See, e.g., *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444–45 (7th Cir. 2009) (affirming dismissal for lack of jurisdiction based on affidavits that plaintiff was unable to rebut); *Sapperstein v. Hager*, 188 F.3d 852, 855–56 (7th Cir. 1999) (reversing dismissal for lack of jurisdiction based on affidavit plaintiff never had opportunity to challenge).)

The boundary between mootness and the merits, as with the boundary between standing and the merits, can sometimes be difficult to discern, as it is in this case. As in *Winslow*, and because jurisdictional issues like standing and mootness are not waivable, we overlook the misnomer and address the substance of the motion. Because the district court was correct that the injunction claims are moot, we affirm their dismissal on that ground.

---

[4] As Judge Gottschall noted in her order on Broadview's second summary judgment motion, Broadview made this same error in that earlier motion. See *Chicago Joe's Tea Room, LLC v. Village of Broadview,* 790 F. Supp. 2d 693, 694–95 (N.D. Ill. 2011).

"Whether a case has been rendered moot is a question of law that we review de novo." *Zessar v. Keith*, 536 F.3d 788, 793 (7th Cir. 2008), quoting *Federation of Advertising Industry Representatives, Inc. v. City of Chicago*, 326 F.3d 924, 928–29 (7th Cir. 2003). Mootness strips a federal court of subject-matter jurisdiction. *DJL Farm LLC v. EPA*, 813 F.3d 1048, 1050 (7th Cir. 2016) (per curiam), citing *Pakovich v. Verizon LTD Plan*, 653 F.3d 488, 492 (7th Cir. 2011). If "an event occurs while a case is pending … that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party, the [case] must be dismissed." *Cornucopia Institute v. USDA*, 560 F.3d 673, 676 (7th Cir. 2009) (alterations in original), quoting *Church of Scientology of California v. United States*, 506 U.S. 9, 12 (1992). This analysis proceeds claim by claim. See, e.g., *Pakovich*, 653 F.3d at 492 (holding that district court retained jurisdiction over claim for attorney fees despite moot claim for benefits and noting that an "entire claim is not mooted simply because the *specific* relief it sought has been rendered moot"), quoting *Cornucopia Institute*, 560 F.3d at 676); see also 13B Wright & Miller, Federal Practice and Procedure § 3533 (3d ed.) ("As long as damages can be claimed, it remains necessary to resolve the issues that control damages liability. The continuing availability of an injunction, declaratory judgment, or other form of specific relief may be much more uncertain.").

a. *Vested Rights*

To explain the mootness problem the district court faced, we must detour briefly into the vested-rights doctrine under Illinois law. The general rule is that a property owner has no right to the continuation of an existing zoning classification. Under the vested-rights doctrine, however, a party may acquire a vested right to continue using its property in accord

with existing law, particularly zoning classifications. See *1350 Lake Shore Associates v. Healey*, 861 N.E.2d 944, 950 (Ill. 2006). A right may vest before actual use begins where "there has been a substantial change of position, expenditures or incurrence of obligations made in good faith by an innocent party under a building permit or in reliance upon the probability of its issuance. . . ." *Id.*, quoting *People ex rel. Skokie Town House Builders, Inc. v. Village of Morton Grove*, 157 N.E.2d 33, 37 (Ill. 1959).

The problem for Chicago Joe's here is that when it claims its rights vested, its proposal to use the property would have violated at least one Broadview ordinance. This is not a case where Chicago Joe's made substantial investments in good faith, filed a special-use permit application that complied with existing law, and the local government then responded by amending its ordinances to prohibit the planned use. The undisputed facts here show that Chicago Joe's original application proposed a use with sales of alcoholic beverages, which would have violated a presumptively valid ordinance that Chicago Joe's did not challenge before applying for the permit.

The Illinois courts have made clear that a property owner who claims a vested right must proceed according to the law as it existed at an earlier time, by "attempting to comply with an ordinance as written." *City of Elgin*, 860 N.E.2d at 857 (no vested right for church that conducted worship services in district where zoning ordinance prohibited churches because church attempted to "claim a vested right to ignore the existing ordinance"). See generally *Christian Assembly Rios de Agua Viva v. City of Burbank*, 948 N.E.2d 251, 255 (Ill. App. 2011) (plaintiff must show "probability" of municipal approval and

substantial change in position based upon that probability), quoting *Bank of Waukegan v. Village of Vernon Hills*, 626 N.E.2d 245, 251 (Ill. App. 1994).

Chicago Joe's vested-rights theory fails that requirement. Inovskis sought permission to do what Broadview's adult-use ordinance expressly forbade at the time. That is the opposite of what the vested-rights doctrine requires. When he applied for the special-use permit, it was "unlawful for any adult business to sell, distribute, or permit beer or alcoholic beverages on the premises." Inovskis was seeking permission *to violate* the adult-use ordinance:

> *I am seeking* the following from the Village of Broadview:
>
> Permission to operate an adult use facility in all adult use categories as defined in the Code of Ordinances of the Village of Broadview, *permission to operate a restaurant with the ability to sell alcohol*, permission to operate 24 hours per day – seven days per week, permission to operate a valet parking service for customers and employees in order not to disturb current traffic or parking patterns in the surrounding area, and permission to use an off site parking lot in addition to on site parking.

Complaint at 17 (emphasis added). That was the basis for Broadview's denial of the application. Because adult-use facilities could not serve alcohol, Chicago Joe's cannot make the required showing that it probably would have won approval under the law as it stood when it applied for a special-use permit.

On appeal, Chicago Joe's argues that it could still acquire a vested right because the application was for a special-use permit and not for serving alcohol, which would have required a separate liquor license. This argument is unpersuasive. In considering an application under the special-use ordinance, Broadview did not have to blind itself to proposed violations of other ordinances. In fact, the special-use ordinance *required* Broadview to consider the restrictions in the adult-use ordinance: "Special uses shall be authorized or denied by the village board of trustees in accordance with the statutes of the state applicable to amendments of this title, and the regulations and conditions set forth in this title for special uses." Because the vested-rights doctrine does not apply to Chicago Joe's planned operation of a strip club in Broadview, we need not explore a number of further issues that would arise otherwise.[5]

### b. *The Illinois Statute*

In the end, we agree with the district court that Chicago Joe's claims for injunctive relief are moot because an applicable Illinois statute now prohibits Chicago Joe's from opening anywhere in Broadview. Chicago Joe's has not challenged that statute, and it would effectively prohibit a court from granting effective relief to Chicago Joe's even if Chicago Joe's prevailed on its federal constitutional challenges to the Broadview ordinances. That is so whether Chicago Joe's had a

---

[5] The district court assumed that the vested-rights doctrine "applies to federal claims such as those at issue here." *Chicago Joe's II*, 2016 WL 1270398, at *5. We have made that same assumption for purposes of argument.

vested right or not, though it is certainly clearer in the absence of a vested right.

Illinois statutes preempt conflicting ordinances by non-home-rule municipalities. *Village of DePue v. Exxon Mobil Corp.*, 537 F.3d 775, 787 (7th Cir. 2008), citing *Hawthorne v. Village of Olympia Fields*, 790 N.E.2d 832, 842 (Ill. 2003). It is undisputed that Broadview is a non-home-rule municipality. And we have declined to apply the vested-rights doctrine before because Illinois state courts "would not interpret a common law doctrine in a manner that neutralizes the meaning of a state statute." *Vision Church, United Methodist v. Village of Long Grove*, 468 F.3d 975, 1005 (7th Cir. 2006) (vested right in zoning classification would have made Illinois involuntary annexation statute "meaningless"). We reach the same conclusion here.

In August 2007, a few months after Broadview had denied Chicago Joe's permit application in March 2007, the Illinois legislature amended its "Adult entertainment facility" statute to prohibit "locat[ing], construct[ing], or operat[ing] a new adult entertainment facility *within one mile* of the property boundaries of any school, day care center, cemetery, public park, forest preserve, public housing, or place of religious worship located in that area of Cook County outside of the City of Chicago." 65 Ill. Comp. Stat. Ann. 5/11-5-1.5 (emphasis added). The prior version was less restrictive, with only a 1,000-foot setback. Plaintiff Conway's property is within one mile of a cemetery, two schools, three parks, and a church. By its terms, the state statute forecloses any attempt to operate a strip club on Conway's property, and apparently anywhere else in Broadview. *Chicago Joe's II*, 2016 WL 1270398, at *6. A

court could not grant Chicago Joe's "any effectual relief whatever," see *Cornucopia Institute*, 560 F.3d at 676, quoting *Church of Scientology*, 506 U.S. at 12, by enjoining Broadview from enforcing its ordinances. Chicago Joe's has not sued any defendants who could be enjoined from enforcing the Illinois statute and has not otherwise challenged it. We agree with the district court that Chicago Joe's claims for injunctive relief are moot.[6]

### 3. *Law of the Case*

Finally, Chicago Joe's has also suggested that under the law-of-the-case doctrine, the district court erred by even entertaining any arguments about mootness and vested rights. Judge Gottschall's first summary judgment ruling in 2008 held that Chicago Joe's had a "vested right" in the setback subsection of Broadview's adult-use ordinance, but only in that subsection. *Chicago Joe's I*, 2008 WL 4287002, at *6 & n.10. Chicago Joe's argues that the issue of its vested rights should have been closed after that ruling, at least in the district court. Because Chicago Joe's raised the issue only in a footnote and without any citation, this issue was waived. *Evergreen Square of Cudahy v. Wisconsin Housing & Economic Dev. Auth.*, 848 F.3d 822, 829 (7th Cir. 2017), citing *United States v. Warner*, 792 F.3d 847, 856 (7th Cir. 2015), and *Harmon v. Gordon*, 712 F.3d 1044, 1053 (7th Cir. 2013).

---

[6] In the last summary judgment order, the district court noted that Chicago Joe's briefing "suggest[ed] that Broadview's local analog to the [statute] is unconstitutional," but that this is "quite different from challenging the validity of the statute itself." *Chicago Joe's II*, 2016 WL 1270398, at *7 n.7. On appeal, Chicago Joe's appears to have made the strategic decision not to challenge the statute. Reply Br. at 7 ("Chicago Joe's will have the opportunity to challenge the state statute once it has overcome the hurdle of the Village's wrongful denial of its special use permit.").

In any event, Judge Lee did not abuse his discretion by taking a fresh look at the issue of vested rights. The law of the case is a discretionary doctrine, not an inflexible dictate. E.g., *Pepper v. United States*, 562 U.S. 476, 506–07 (2011), quoting *Arizona v. California*, 460 U.S. 605, 618 (1983); *Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012), citing *Gallimore v. Missouri Pacific R.R. Co.*, 635 F.2d 1165, 1170–72 (5th Cir. 1981); *Minch v. City of Chicago*, 486 F.3d 294, 302 (7th Cir. 2007), citing *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 572 (7th Cir. 2006); *Avitia v. Metropolitan Club of Chicago, Inc.*, 49 F.3d 1219, 1227 (7th Cir. 1995) (law of the case is "a presumption … not a straitjacket"), citing *Philips Medical Sys. Int'l B.V. v. Bruetman*, 8 F.3d 600, 603 (7th Cir. 1993); see also *Best v. Shell Oil Co.*, 107 F.3d 544, 546–47 (7th Cir. 1997) (second judge's discretion to revisit issues depends on standard of appellate review and records and procedural postures for different decisions); *Peterson v. Lindner*, 765 F.2d 698, 704 (7th Cir. 1985) ("[W]hen good reasons for [re-examination] appear (such as new evidence or controlling law, or clear error), the 'law of the case' doctrine must yield to rational decisionmaking.") (second alteration added), citing 20 A.L.R. Fed. 13 (1974). Also, a second judge is "significantly less constrained by the law of the case doctrine with respect to jurisdictional questions." *Gilbert v. Illinois State Bd. of Educ.*, 591 F.3d 896, 903 (7th Cir. 2010), quoting *O'Sullivan v. City of Chicago*, 396 F.3d 843, 849–50 (7th Cir. 2005). And the doctrine does not apply when the first judge never decided the precise issue before the second judge. *Id.*, citing *FMS, Inc. v. Volvo Construction Equipment North America, Inc.*, 557 F.3d 758, 762–63 (7th Cir. 2009).

In this case, several factors made it reasonable for Judge Lee to revisit the issue of vested rights. The issue affects sub-

ject-matter jurisdiction; the two judges actually decided different questions, particularly since Judge Gottschall limited her decision to only the setback subsection of the local ordinance rather than the planned use of the property; and Judge Lee had a more detailed and complete record, after discovery had been completed. Judge Lee did not err by reconsidering Judge Gottschall's order; Chicago Joe's claims for an injunction are moot.

The district court's dismissal of Chicago Joe's claims for injunctive relief is

AFFIRMED.